| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Diamond Brite Enterprises, LLC | ) | Case No. 17-51391 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S EMERGENCY APPLICATION TO SELL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363 AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASE UNDER 11 U.S.C. §365 OF THE BANKRUPTCY CODE

TO THE HONORABLE CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE:

Diamond Brite Enterprises, LLC., Debtor herein, file this Emergency Application to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363 of the Bankruptcy Code and respectfully represent the following:

### Background

1.      On June 13, 2017, the Debtor filed with this Court a voluntary petition under chapter 11 of title 11, United States Code (the **"Code"**).   Debtor is operating as the Debtor in Possession.

### Summary of Relief Requested

2.      Debtor operates a car wash business known as Diamond Brite at 18403 Rim Drive, San Antonio, Texas.  The business sits on a ground lease with Hines Global REIT.  Debtor seeks to sell all personal property and buildings located on NCB 14747 Blk 5 Lot 11 (The Rim UT-15) and the assignment of the ground lease with Hines Global REIT to **Racer Wash Management, LLC and/or assigns  (hereafter "Buyer" )**.

3.      This Contract was receipted with Title One Texas on July 20, 2017 which is the Effective Date.

## Jurisdiction & Venue

4. The District Court has jurisdiction pursuant to 28 U.S.C. §1334(b). This matter has been referred to the Bankruptcy Court by General Order 2005-12. Venue is proper in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, as this is the location of the Debtor's business and bankruptcy filing.

## Core Proceeding

5. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (N) and (O). Since this is a core proceeding, the Bankruptcy Court has constitutional authority to enter final orders regarding the Motion. Further, to the extent that the Court determines that it does not have the authority to enter a final judgment on a portion of or all of the Motion, the Debtor requests that the Court issue a report and recommendation for a judgment to the United States District Court for the Western District of Texas, San Antonio Division.

## The Property

6. At the time of filing of the petition, Debtor's Schedules and Statement of Affairs identified that owns a cash wash business on certain leased property at 18403 Rim Drive, San Antonio, Texas 78257, improved with a car wash business. Hines Global REIT owns the property and is the landlord. (hereafter referred to as the "Property"). Any sale includes the assumption and assignment of this lease as described below.

## The Sale

7. Debtor desires to sell the Property to Buyer for the sum of $3,075,000.00 Cash. A copy of the Commercial Contract is attached hereto as Exhibit "A".

8. Debtor and Buyer's obligations to consummate the transactions contemplated in this Agreement shall be Conditioned upon the Bankruptcy Court's entry of the Approval Order.

9. This sale is part of a funding mechanism for the Plan. Debtor seeks to sell this property prior to confirmation of the Plan under 11 U.S.C. §363. The test is whether there is a sound business reason for the sale; adequate and reasonable notice to interested parties has been provided; the sale price is fair and reasonable and the proposed buyer is proceeding in good faith. *Medical Software Solutions, 286 B.R. 431.*

10. The sale shall be made "as is, where is", with no representations or warranties of any kind, except as set forth in the Contract.

11.     Buyer has a 30 day feasibility period which will expire on August 19, 2017. Closing is to occur 15 days after the expiration of the feasibility period or on or about September 4, 2017.

## The Debts and Liens

12.     The following entities assert a lien on the property:

    a.     Community Bank of Texas holds a lien on the property to secure a debt in the approximate amount of $1,393,626.87.

    b.     Bexar County has filed a proof of claim (Claim No. 2) asserts a tax lien on the property to secure a debt in the approximate amount of $43,892.17.

    c.     SETEDF asserts a lien on the equipment to secure a debt in the approximate amount of $934,685.19.

    d.     Hines Global may assert a secured claim for ad valorem taxes it paid in the amount of $161,420.67

## Assignment of Lease

13.     The sale contemplates and requires the debtor to assume and assign a certain ground lease with Hines Global where the car wash is located.  The lease is described as follows:

> that original Ground Lease Agreement for the Leased Property, and which Leased Property is the land upon which the Property is located, and which land is owned, and leased by Seller from Hines Global REIT San Antonio Retail I LP, whose office is at 2800 Post Oak Blvd. Suite 4800, Houston, TX 77056 (the "Landlord"), and who is the successor in interest to Fourth Quarter Properties 140, LLC, a Georgia limited liability company (the "Original Landlord").

> This Leased Property is also legally described as:
> NCB 14747 BLK 5 LOT 11 (THE RIM UT-15) (the Leased Property")

14.     If this contract closing and is funded, Debtor is requesting under 11 U.S.C. § 365(a) to assume and assign the Hines Global Lease.  Debtor asserts there is no default under the lease. However, Hines Global paid certain ad valorem taxes on the property in the amount of $161,420.67.  Debtor will reimburse Hines Global for this tax payment under this agreement.

## Sale Free and Clear

15. In accordance with the terms of the Contract, Debtor proposes to sell the Property free and clear of all liens and encumbrances. Specifically, Debtor requests an order of this Court that finds and orders the following:

      a) That Buyer is a good faith purchaser of the Property;

      b) That the order provide that the Property is sold to Buyer free and clear of all liens, claims, preferential rights, interests and encumbrances whatsoever (except as expressly provided in this Agreement);

      c) That the stay under Bankruptcy Rules 6004(g) and 6006(d) are waived and are not in effect; and

      d) That this sale does not and will not subject or expose the Buyer, its successors or assigns, to any liability claim, cause of action or remedy by reason of such sale and transfer, including, without limitation, any claim, cause of action or remedy based on any theory of successor or transferee liability and that Buyer shall not assume any liability or obligation of the Debtor, fixed or contingent, disclosed or undisclosed, or any liability for such claims, debts, defaults, duties, obligations or liabilities of Seller of any kind or nature, whether known or unknown, contingent or fixed, all of which, to the extent that they existed prior to the Closing Date, are retained by the Debtor (the "Retained Liabilities")

## Realtor

16. Elliot Silverstone Co. and Attice Realty, LLC are Realtors representing the Debtor and Buyer respectively. Each will receive 2.5% Realtor Fee for a total of 5%.

## Disposition of Proceeds

17 Debtor proposes that the first proceeds of sale be used to pay all normal and customary cost of closing including survey cost, title policy, and Realtor Fees, if any. All ad valorem taxes will be paid at closing.

18. In addition, the Debtor seeks to pay the claims of Community Bank, SETEDF, Hines Global and the IRS, once the claims are determined. The deadline to file proofs of claims is **October 10, 2017.**

-4-

19. Debtor asserts the sale proceeds will be sufficient to pay all creditors based on the following estimates:

| | |
|---|---|
| Sales Price | $3,075,000.00 |
| | |
| Closing Cost | $17,000.00 |
| Realtor Fees | $153,750.00 |
| Ad Valorem | $43,892.17 (2015-2017) |
| Hines Global | $161,420.87 (cure default) |
| | |
| Community Bank | $1,393,626.87 |
| SETEDF | $934,685.19 |
| IRS | $143,816.44 ($40,000 is for un-assessed FICA taxes) |
| Unsecureds | $215,329.45 |
| | |
| Remaining Balance: | $122,436.13 |

## Good Faith

19. In the exercise of its business judgment, Debtor has determined that the proposed sale to the Purchaser is, at present, the highest and best offer under the circumstances and will maximize the value of the Estate.

20. In evaluating such a sale, a court must balance the need for flexibility with the concerns of the affected creditors. *In re Terrace Gardens Park Partnership,* 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also determine that creditor's lien rights are adequately protected and that the offer price is the highest price obtainable under the circumstances in the particular case. *Id.; In re Beker Indus. Corp.,* 63 B.R. 474, 477-78 (Bankr. S.D.N.Y. 1986).

WHEREFORE, PREMISES CONSIDERED, Debtor prays that the Court approve this Emergency Application which includes the assumption and assignment of the Hines Global lease and for such other and further relief as it may deem just.

-5-

Respectfully submitted,

_____/s/Dean W. Greer_____

DEAN W. GREER
2929 Mossrock, Suite 117
San Antonio, Texas 78230
(210) 342-7100
(210) 342-3633 - Telecopier
State Bar No. 08414100
Email: dwgreer@sbcglobal.net
Attorney for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on the parties listed below and upon all creditors including those Parties Requesting Notice listed on the Attached **Exhibit B** using the CM/ECF System or by First Class Mail, Postage Prepaid on the 9th day of August, 2017.

DIAMOND BRITE ENTERPRISES, LLC.
18403 RIM DRIVE
SAN ANTONIO, TEXAS 78257

U.S. TRUSTEE
P. O. BOX 1539
SAN ANTONIO, TEXAS 78295-1539
**U.S. TRUSTEE**

Chris Pittman
Pittman& Harrison, PLLC
email: chrispittman@phfirm.com
Attorney for Hines Global

_____/s/Dean W. Greer_____

Dean W. Greer

-6-

Attachment Summary

A.     Contract

B.     List of all Creditors

The contract was only sent to those receiving ECF communications. The contract is on file with the Bankruptcy Clerk. Any other creditor may obtain a copy of the attachments from the Bankruptcy Court or by contacting this office.

*/s/Dean W. Greer*

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5



TEXAS ASSOCIATION OF REALTORS®
# COMMERCIAL CONTRACT - IMPROVED PROPERTY
USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2016

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

   Seller: **Diamond Brite Enterprises LLC.**

   Address: **18403 Rim Drive, San Antonio, TX  78257**
   Phone: **(409)540-0393**          E-mail: **andyfoster@live.com**
   Fax:                              Other:

   Buyer: **Racer Wash Management, LLC.**

   Address: **3309 67th Street, Ste 22, Lubbock, TX  79413**
   Phone: **(806)543-2775**          E-mail: **andrew@racerwash.com**
   Fax:                              Other: **keith@lubbockfileroom.com**

2. **PROPERTY:**

   A. "Property" means that real property situated in **BEXAR** County, Texas at
      **18403 RIM DRIVE, SAN ANTONIO, TX 78257**
      *(address)* and that is legally described on the attached Exhibit                    or as follows:
      **SEE PARAGRAPH 12. SPECIAL PROVISIONS**

   B. Seller will sell and convey the Property together with:
      (1) all buildings, improvements, and fixtures;
      (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
      (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
      (4) Seller's interest in all licenses and permits related to the Property;
      (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
      (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
      (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except:
          Any personal property not included in the sale must be removed by Seller prior to closing.

   *(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)*
   *(If mineral rights are to be reserved an appropriate addendum should be attached.)*
   *(If the Property is a condominium, attach Commercial Contract Condominium Addendum (TAR-1930).)*

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

   A. Cash portion payable by Buyer at closing . . . . . . . . . . . . . . . . . . . . . . . . . . $          **615,000.00**

   B. Sum of all financing described in Paragraph 4 . . . . . . . . . . . . . . . . . . . . . . . $        **2,460,000.00**

   C. Sales price (sum of 3A and 3B) . . . . . . . . . . . . . . . . . . . . . . . . . . . $        **3,075,000.00**

Attlee Realty, LLC 6633 Eldorado Pkwy, Ste 410 McKinney, TX 75070                     Phone: (972) 832-8219        Fax: (214) 310-5118        Diamond Brite
Veronica Attlee                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



EXHIBIT A

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C4B4A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning     **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

4.   **FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

**X**   A.   Third Party Financing: One or more third party loans in the total amount of $ **2,460,000.00**         . This
      contract:
      |X| (1) is not contingent upon Buyer obtaining third party financing.
      | | (2) is contingent upon Buyer obtaining third party financing in accordance with the attached
      Commercial Contract Financing Addendum (TAR-1931).

      B.   Assumption: In accordance with the attached Commercial Contract Financing Addendum (TAR-1931),
      Buyer will assume the existing promissory note secured by the Property, which balance at closing will
      be $ **N/A**                        .

      C.   Seller Financing: The delivery of a promissory note and deed of trust from Buyer to Seller under the
      terms of the attached Commercial Contract Financing Addendum (TAR-1931) in the amount of
      $ **N/A**                     .

5.   **EARNEST MONEY:**

      A.   Not later than 3 days after the effective date, Buyer must deposit $ **$10,000.00**        as earnest money
      with **Title One Texas (Tel: 806-771-7770)**                                       (title company)
      at **6102 82nd Street #11, Lubbock, TX 79424**        (address)                        (closer).
      If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of
      Seller's other remedies under Paragraph 15 by providing written notice to Buyer before Buyer deposits
      the earnest money.

      B.   Buyer will deposit an additional amount of $ **N/A**              with the title company to be made
      part of the earnest money on or before:
      (i)    **N/A**   days after Buyer's right to terminate under Paragraph 7B expires; or
      (ii)   **N/A**                                                                .
      Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B
      within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

      C.   Buyer may instruct the title company to deposit the earnest money in an interest-bearing account at a
      federally insured financial institution and to credit any interest to Buyer.

6.   **TITLE POLICY, SURVEY, AND UCC SEARCH:**

      A.   Title Policy:

      (1)   Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy)
      issued by any underwriter of the title company in the amount of the sales price, dated at or after
      closing, insuring Buyer against loss under the title policy, subject only to:
      (a)   those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
      (b)   the standard printed exceptions contained in the promulgated form of title policy unless this
      contract provides otherwise.

      (2)   The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary
      lines, or any encroachments or protrusions, or any overlapping improvements:
      |X| (a) will not be amended or deleted from the title policy.
      | | (b) will be amended to read "shortages in areas" at the expense of     | |Buyer    |  |Seller.

      (3)   Within          days after the effective date, Seller will furnish Buyer a commitment for title insurance
      (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller
      authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's
      address.

Commercial Contract - Improved Property concerning    **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

B. <u>Survey</u>: Within    **5**    days after the effective date:

☐ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the: (i) ALTA/ACSM Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition. Seller will reimburse Buyer _____ *(insert amount)* of the cost of the survey at closing, if closing occurs.

☐ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the: (i) ALTA/ACSM Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

**X** (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's most recent survey of the Property along with an affidavit required by the title company for approval of the existing survey. If the existing survey is not acceptable to the title company, Seller, at Seller's expense, will obtain a new or updated survey acceptable to the title company and deliver the acceptable survey to Buyer and the title company within 20 days after Seller receives notice that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 20 days if necessary for Seller to deliver an acceptable survey within the time required. Buyer will reimburse Seller **N/A** _____ *(insert amount)* of the cost of the new or updated survey at closing, if closing occurs.

C. <u>UCC Search</u>:

**X** (1) Within    **10**    days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

☐ (2) Buyer does not require Seller to furnish a UCC search.

D. <u>Buyer's Objections to the Commitment, Survey, and UCC Search</u>:

(1) Within    **10**    days after Buyer receives the commitment, copies of the documents evidencing the title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed are a restriction upon the Property or constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning      **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

## 7. PROPERTY CONDITION:

A. <u>Present Condition</u>: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing:



B. <u>Feasibility Period</u>: Buyer may terminate this contract for any reason within      **30**      days after the effective date (feasibility period) by providing Seller written notice of termination. *(Check only one box.)*

**X** (1) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ **100.00**           that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. <u>If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.</u>

(2) Not later than 3 days after the effective date, Buyer must pay Seller $      **N/A**      as independent consideration for Buyer's right to terminate by tendering such amount to Seller or Seller's agent. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. <u>If no dollar amount is stated in this Paragraph 7B(2) or if Buyer fails to pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.</u>

C. <u>Inspections, Studies, or Assessments</u>:

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
    (a) employ only trained and qualified inspectors and assessors;
    (b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
    (c) abide by any reasonable entry rules or requirements of Seller;
    (d) not interfere with existing operations or occupants of the Property; and
    (e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D. <u>Property Information</u>:

(1) <u>Delivery of Property Information</u>: Within      **7**      days after the effective date, Seller will deliver to Buyer: *(Check all that apply.)*

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning  **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

  (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;

X (b) copies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases;

X (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;

  (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;

X (e) copies of all current service, maintenance, and management agreements relating to the ownership and operation of the Property;

  (f) copies of current utility capacity letters from the Property's water and sewer service provider;

X (g) copies of all current warranties and guaranties relating to all or part of the Property;

  (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;

  (i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;

X (j) a copy of the "as-built" plans and specifications and plat of the Property;

X (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;

  (l) a copy of Seller's income and expense statement for the Property from   **January 1, 2014** to   **June 30, 2017**  ;

X (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

  (n) real & personal property tax statements for the Property for the previous 2 calendar years; and

  (o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from     to    ; and

X (p) **SEE SPECIAL PROVISIONS ADDENDUM**


 (2) <u>Return of Property Information</u>: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: *(Check all that apply.)*

  (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer in other than an electronic format and all copies that Buyer made of those items;

X (b) delete or destroy all electronic versions of those items described in Paragraph 7D(1) that Seller delivered to Buyer or Buyer copied; and

  (c) deliver copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed.

  This Paragraph 7D(2) survives termination of this contract.

E. <u>Contracts Affecting Operations</u>: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

**8. LEASES:**

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:

 (1) any failure by Seller to comply with Seller's obligations under the leases;

 (2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;

(TAR-1801) 1-1-16  Initialed for Identification by Seller _____ and Buyer _____  Page 5 of 14

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Diamond Brite

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

(3) any non-occupancy of the leased premises by a tenant;

(4) any advance sums paid by a tenant under any lease;

(5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and

(6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. Estoppel Certificates: Within  **--**  days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than **N/A** by each tenant that leases space in the Property. The estoppel certificates must include the certifications contained in the current version of TAR Form 1938 - Commercial Tenant Estoppel Certificate and any additional information requested by a third party lender providing financing under Paragraph 4 if the third party lender requests such additional information at least 10 days prior to the earliest date that Seller may deliver the signed estoppel certificates.

## 9. BROKERS:

A. The brokers to this sale are:

| | |
|---|---|
| **Principal Broker: Elliot Silverstone** | **Cooperating Broker: Attlee Realty, LLC.** |
| **DBA Silverstone Real Estate Servs** | |
| Agent: **Elliot Silverstone** | Agent: **Veronica Attlee** |
| Address: **7100 Spurlock** | Address: **6633 Eldorado Pkwy, Ste 410** |
| **Austin, TX 78731** | **McKinney, TX 75070** |
| Phone & Fax: **(512)416-1000** | Phone & Fax: **(972)832-8219**        **(214)310-5118** |
| E-mail: **elliot@silverstoneco.com** | E-mail: **veronica@attleerealty.com** |
| License No.: **428895** | License No.: **0496075** |

Principal Broker: *(Check only one box.)*          Cooperating Broker represents Buyer.

[X]  represents Seller only.

[ ]  represents Buyer only.

[ ]  is an intermediary between Seller and Buyer.

B. Fees: *(Check only (1) or (2) below.)*
   *(Complete the Agreement Between Brokers on page 14 only if (1) is selected.)*

[ ]  (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

[X]  (2) At the closing of this sale, Seller will pay:

Principal Broker a total cash fee of:          Cooperating Broker a total cash fee of:

[X]   **2.500**   % of the sales price.          [X]   **2.500**   % of the sales price.

The cash fees will be paid in          **LUBBOCK**          County, Texas. Seller authorizes the title company to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning    **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

   C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

## 10. CLOSING:

   A. The date of the closing of the sale (closing date) will be on or before the later of:
      (1) **X**    **15**   days after the expiration of the feasibility period.
                          *(specific date)* .

      (2) 7 days after objections made under Paragraph 6D have been cured or waived.

   B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

   C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a    general **X** special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:
      (1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;
      (2) without any assumed loans in default; and
      (3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

   D. At closing, Seller, at Seller's expense, will also deliver to Buyer:
      (1) tax statements showing no delinquent taxes on the Property;
      (2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
      (3) an assignment of all leases to or on the Property;
      (4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
         (a) licenses and permits;
         (b) maintenance, management, and other contracts; and
         (c) warranties and guaranties;
      (5) a rent roll current on the day of the closing certified by Seller as true and correct;
      (6) evidence that the person executing this contract is legally capable and authorized to bind Seller;
      (7) an affidavit acceptable to the title company stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the title company to: (i) withhold from Seller's proceeds an amount sufficient to comply applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and
      (8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

   E. At closing, Buyer will:
      (1) pay the sales price in good funds acceptable to the title company;
      (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
      (3) sign and send to each tenant in the Property a written statement that:
         (a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and
         (b) specifies the exact dollar amount of the security deposit;
      (4) sign an assumption of all leases then in effect; and
      (5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

Commercial Contract - Improved Property concerning    **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

    F.  Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

**11. POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

**12. SPECIAL PROVISIONS:** The following special provisions apply and will control in the event of a conflict with other provisions of this contract. *(If special provisions are contained in an Addendum, identify the Addendum here and reference the Addendum in Paragraph 22D.)*
**PARAGRAPH 2 A.:    The Property to be conveyed includes all Seller's title, rights, benefits, and interest in and to;**
    **(i)  the Property which includes all the buildings, improvements, equipment, fixtures, chattels, and all tangible and intangible personal property (collectively the "Property") located at 18403 Rim Dr, San Antonio, TX 78257, Bexar County, and that is used in connection with  the operation, ownership, maintenance, management, or occupancy of the Property.**

    **(ii) that original Ground Lease Agreement for the Leased Property, and which Leased Property is the land upon which the Property is located, and which land is owned, and leased by Seller from Hines Global REIT San Antonio Retail I LP, whose office is at 2800 Post Oak Blvd. Suite 4800 Houston, TX 77056 (the "Landlord"), and who is the successor in interest to Fourth Quarter Properties 140, LLC, a Georgia limited liability company (the "Original Landlord").**
**This Leased Property is also legally described as:**
**NCB 14747 BLK 5  LOT 11 (THE RIM UT-15) (the "Leased Property")**
**See additional provisions in the attached Special Provisions Addendum.**

**13. SALES EXPENSES:**

    A.  <u>Seller's Expenses</u>: Seller will pay for the following at or before closing:
        (1)  releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
        (2)  release of Seller's loan liability, if applicable;
        (3)  tax statements or certificates;
        (4)  preparation of the deed and any bill of sale;
        (5)  one-half of any escrow fee;
        (6)  costs to record any documents to cure title objections that Seller must cure; and
        (7)  other expenses that Seller will pay under other provisions of this contract.

    B.  <u>Buyer's Expenses</u>: Buyer will pay for the following at or before closing:
        (1)  all loan expenses and fees;
        (2)  preparation fees of any deed of trust;
        (3)  recording fees for the deed and any deed of trust;
        (4)  premiums for flood and hazard insurance as may be required by Buyer's lender;
        (5)  one-half of any escrow fee; and
        (6)  other expenses that Buyer will pay under other provisions of this contract.

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

## 14. PRORATIONS:

A. <u>Prorations</u>:

   (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.

   (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.

   (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. <u>Rollback Taxes</u>: If Seller's use or change in use of the Property before closing results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

C. <u>Rent and Security Deposits</u>: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

## 15. DEFAULT:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(4) which Seller may pursue, or
*(Check if applicable)*
    enforce specific performance, or seek such other relief as may be provided by law.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:

   (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or

   (2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:

   (1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or

   (2) enforce specific performance, or seek such other relief as may be provided by law, or both. ~~KMc~~

## 16. CASUALTY LOSS AND CONDEMNATION:

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:

   (1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;

Commercial Contract - Improved Property concerning **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

    (2) extend the time for performance up to 15 days and closing will be extended as necessary; or
    (3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
    (1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
    (2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

17. **ATTORNEY'S FEES:** If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

18. **ESCROW:**

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer. If no closing occurs, the title company may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of the title company from all parties.

B. If one party makes written demand for the earnest money, the title company will give notice of the demand by providing to the other party a copy of the demand. If the title company does not receive written objection to the demand from the other party within 15 days after the date the title company sent the demand to the other party, the title company may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and the title company may pay the same to the creditors.

C. The title company will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

D. If the title company complies with this Paragraph 18, each party hereby releases the title company from all claims related to the disbursal of the earnest money.

E. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to the title company are effective upon receipt by the title company.

F. Any party who wrongfully fails or refuses to sign a release acceptable to the title company within 7 days after receipt of the request will be liable to the other party for: (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

G. ☐ Seller ☐ Buyer intend(s) to complete this transaction as a part of an exchange of like-kind properties in accordance with Section 1031 of the Internal Revenue Code, as amended. All expenses in connection with the contemplated exchange will be paid by the exchanging party. The other party will not incur any expense or liability with respect to the exchange. The parties agree to cooperate fully and in good faith to arrange and consummate the exchange so as to comply to the maximum extent feasible with the provisions of Section 1031 of the Internal Revenue Code. The other provisions of this contract will not be affected in the event the contemplated exchange fails to occur.

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

**19. MATERIAL FACTS:** To the best of Seller's knowledge and belief: *(Check only one box.)*

|X| A. Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TAR-1408).

☐ B. Except as otherwise provided in this contract, Seller is not aware of:
  (1) any subsurface: structures, pits, waste, springs, or improvements;
  (2) any pending or threatened litigation, condemnation, or assessment affecting the Property;
  (3) any environmental hazards or conditions that materially affect the Property;
  (4) whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
  (5) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
  (6) any wetlands, as defined by federal or state law or regulation, on the Property;
  (7) any threatened or endangered species or their habitat on the Property;
  (8) any present or past infestation of wood-destroying insects in the Property's improvements;
  (9) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;
  (10) any material physical defects in the improvements on the Property; or
  (11) any condition on the Property that violates any law or ordinance.

  *(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, or sent by facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

X A. Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.
X B. Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns. This contract is to be construed in accordance with the laws of the State of Texas. If any term or condition of this contract shall be held to be invalid or unenforceable, the remainder of this contract shall not be affected thereby.

B. This contract contains the entire agreement of the parties and may not be changed except in writing.

C. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

D. Addenda which are part of this contract are: *(Check all that apply.)*
  ☐ (1) Property Description Exhibit identified in Paragraph 2;
  ☐ (2) Commercial Contract Condominium Addendum (TAR-1930);
  ☐ (3) Commercial Contract Financing Addendum (TAR-1931);
  X (4) Commercial Property Condition Statement (TAR-1408);
  X (5) Commercial Contract Addendum for Special Provisions (TAR-1940);

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning     **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

(6) Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TAR-1906);

(7) Notice to Purchaser of Real Property in a Water District (MUD);

(8) Addendum for Coastal Area Property (TAR-1915);

(9) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TAR-1916);

(10) Information About Brokerage Services (TAR-2501); and

(11) ___

*(Note: Counsel for the Texas Association of REALTORS® (TAR) has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by TAR are appropriate for use with this form.)*

E. Buyer **X** may   may not assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

23. **TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.

24. **EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract.

25. **ADDITIONAL NOTICES:**

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract.

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers. Brokers are not qualified to determine the credit worthiness of the parties.

J. NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**26. CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on _____ , the offer will lapse and become null and void.

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Seller:  Diamond Brite Enterprises LLC.                          Buyer: Racer Wash Management, LLC.


By: _____                          By:  Keith McNeese

   By (signature): _____                             By (signature): _____
   Printed Name: _____ Andrew L. Foster                           Printed Name: _____ Keith McNeese
   Title: Pres'dent , Manager                                     Title: Partner


By: _____                          By: _____

   By (signature): _____                             By (signature): _____
   Printed Name: _____                               Printed Name: _____
   Title: _____                                      Title: _____

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Contract - Improved Property concerning **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

## AGREEMENT BETWEEN BROKERS
*(use only if Paragraph 9B(1) is effective)*

Principal Broker agrees to pay                                                        (Cooperating Broker) a
fee when the Principal Broker's fee is received. The fee to be paid to Cooperating Broker will be:

$                          , or
% of the sales price, or
% of the Principal Broker's fee.

The title company is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Principal Broker:                                    Cooperating Broker:


By:                                                  By:


## ATTORNEYS

Seller's attorney:                                   Buyer's attorney:

Address:                                             Address:

Phone & Fax:                                         Phone & Fax:

E-mail:                                              E-mail:

Seller's attorney requests copies of documents,     Buyer's attorney requests copies of documents,
notices, and other information:                      notices, and other information:
    the title company sends to Seller.                   the title company sends to Buyer.
    Buyer sends to Seller.                                Seller sends to Buyer.

## ESCROW RECEIPT

The title company acknowledges receipt of:
    A.  the contract on this day                     (effective date);
    B.  earnest money in the amount of $                 in the form of
        on                              .

Title company:                                       Address:

By:                                                  Phone & Fax:

Assigned file number (GF#):                          E-mail:

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5



TEXAS ASSOCIATION OF REALTORS®
## COMMERCIAL CONTRACT SPECIAL PROVISIONS ADDENDUM

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2010

### ADDENDUM TO COMMERCIAL CONTRACT BETWEEN THE UNDERSIGNED PARTIES CONCERNING THE PROPERTY AT:

**18403 Rim Drive, San Antonio, TX 78257**

The following special provisions apply and will control in the event of a conflict with the other provisions of the contract:

**(1) The contract is contingent on both the Buyer's and Landlord's acceptance, and assignment to Buyer, of the Ground Lease Agreement for the Leased Property as referenced in paragraph 12 (ii) of the contract, prior to Closing. Closing will be extended accordingly, but in no event will closing take place later than 45 days from the original Closing Date in 10 A.(1). If these provisions are not met, Buyer may terminate the contract and the Earnest Money will be immediately refunded to Buyer.**

**(2) Within 7 days, Buyer agrees to provide to Landlord, 2 years of Buyer's tax returns, along with a check payment of $3,000 to be applied solely to, and specifically for the legal expenses in preparing the Ground Lease assignment documents.**

**(3) Paragraph 22 E.: Buyer may only assign the contract to a related entity in which Buyer has at least a 51% interest.**

~~(4) Buyer authorizes title company to disburse $200,000 (two hundred thousand) of the Purchase Price at closing directly to Seller~~ for consulting fees. ~~Seller acknowledges that these fees may be subject to I.R.S. reporting requirements.~~  *af  KMc*

**(5) ...Continued - see continuation page attached.**

Seller:                                          Buyer:  Racer Wash Investments

By: _____                    By: Keith McNeese

By (signature): _____     By (signature): _____
Printed Name: *Andrew L Foster*     Printed Name: KEITH MCNeese
Title: *President, Manager*            Title: Partner

By: _____                    By: _____

By (signature): _____     By (signature): _____
Printed Name: _____       Printed Name: _____
Title: _____                Title: _____

(TAR-1940) 1-26-10                                                      Page 1 of 1

Attlee Realty, LLC 6653 Eldorado Pkwy, Ste 410 McKinney, TX 75070          Phone: (972) 832-8219     Fax: (214) 310-5118     Diamond Brite
Veronica Attlee                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

# CONTINUATION PAGE TO COMMERCIAL CONTRACT SPECIAL PROVISIONS ADDENDUM CONCERNING THE PROPERTY AT:

<u>18403 Rim Drive, San Antonio, TX 78257</u>

## BY AND BETWEEN:

Diamond Brite Enterprises LLC. (**"SELLER"**), and Racer Wash Management, LLC. (**"BUYER"**)
(Collectively referred to as the **"Parties"**)

---

… Continued:

(5) Prior to closing, Seller agrees to sign a non-compete agreement that restricts Seller, directly or indirectly, from competing or engaging in the same or similar type of business, within 10 miles of the Property for a term of 5 years.

(6) Paragraph 7.D.(p): Seller to also provide:

   (i)    Point of Sale reports for the past 3 years (2014, 2015, 2016), and 2017 year-to-date for the car wash sales, and the same for oil/lube sales.
   (ii)   Seller's tax returns for the past 3 years (2014, 2015, 2016).
   (iii)  Copies of any loss runs relating to the Property, and a letter from the Seller authorizing Buyer to discuss the Property with the current Insurer.
   (iv)   A detailed list of employees, their duties, salary or hourly rates, any benefits they are paid, including, but not limited to, housing, paid utilities, free storage, mileage reimbursement, health insurance, other insurance, bonus programs, etc.
   (v)    List of equipment and supplies vendors.
   (vi)   Certificate of No Tax Due from the Texas Comptroller.
   (vii)  Proof that all federal, state, and local employee tax liabilities have been paid.

(7) Inventory Reserves: Seller will insure that there are at least one month's inventory reserves for the operation of the car wash, and oil/lube services.

SELLER: _____    BUYER: _____

18403 Rim Drive, San Antonio, TX 78257

Special Provisions Continuation Page

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5



CONCERNING THE PROPERTY AT: **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

THIS IS A DISCLOSURE OF THE SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED. IT IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES A BUYER OR TENANT MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, LANDLORD, LANDLORD'S AGENTS OR ANY OTHER AGENT.

## PART I - Complete if Property is Improved or Unimproved

Are you (Seller or Landlord) aware of:                    **Aware**     **Not Aware**

(1) any of the following environmental conditions on or affecting the Property:

   (a) radon gas? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

   (b) asbestos components: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

       (i)  friable components? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

       (ii) non-friable components? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]
   (c) urea-formaldehyde insulation? . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

   (d) endangered species of their habitat? . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

   (e) wetlands? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

   (f) underground storage tanks? . . . *water reClaim* . . . . . . . . . . . .   [ ✓ ]   [   ]

   (g) leaks in any storage tanks (underground or above-ground)? . . . . . . . . .   [   ]   [ ✓ ]

   (h) lead-based paint? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

   (i) hazardous materials or toxic waste? . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

   (j) open or closed landfills on or under the surface of the Property? . . . . . . . . . . .   [   ]   [ ✓ ]

   (k) external conditions materially and adversely affecting the Property such as nearby landfills, smelting plants, burners, storage facilities of toxic or hazardous materials, refiners, utility transmission lines, mills, feed lots, and the like? . . . . . .   [   ]   [ ✓ ]

   (l) any activity relating to drilling or excavation sites for oil, gas, or other minerals? .   [   ]   [ ✓ ]

(2) previous environmental contamination that was on or that materially and adversely affected the Property, including but not limited to previous environmental conditions listed in Paragraph 1(a)-(l)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

(3) any part of the Property lying in a special flood hazard area (A or V Zone)? . . . . . . .   [   ]   [ ✓ ]

(4) any improper drainage onto or away from the Property? . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

(5) any fault line or near the Property that materially and adversely affects the Property? [   ]   [ ✓ ]

(6) air space restrictions or easements on or affecting the Property? . . . . . . . . . . . . . .   [   ]   [ ✓ ]

(7) unrecorded or unplatted agreements for easements, utilities, or access on or to the Property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [   ]   [ ✓ ]

Attlee Realty, LLC 6633 Eldorado Pkwy, Ste 410 McKinney, TX 75070          Phone: (972) 832-8219     Fax: (214) 310-5118     Diamond Brite
Veronica Attlee                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Property Condition Statement concerning **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

| | **Aware** | **Not Aware** |
|---|---|---|
| (8) special districts in which the Property lies (for example, historical districts, development districts, extraterritorial jurisdictions, or others)? . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (9) pending changes in zoning, restrictions, or in physical use of the Property? . . . . . . . [ ] <br> The current zoning of the Property is: | | [ ✓ ] |
| (10) your receipt of any notice concerning any likely condemnation, planned streets, highways, railroads, or developments that would materially and adversely affect the Property (including access or visibility)?. . . . . . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (11) lawsuits affecting title to or use or enjoyment of the Property? . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (12) your receipt of any written notices of violations of zoning, deed restrictions, or government regulations from EPA, OSHA, TCEQ, or other government agencies? . . . . [ ] | | [ ✓ ] |
| (13) common areas or facilities affiliated with the Property co-owned with others?. . . . . . [ ] | | [ ✓ ] |
| (14) an owners' or tenants' association or maintenance fee or assessment affecting the Property?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] <br> If aware, name of association: <br> Name of manager: <br> Amount of fee or assessment: $          per <br> Are fees current through the date of this notice? [     ] yes [     ] no [     ] unknown | | [ ✓ ] |
| (15) subsurface structures, hydraulic lifts, or pits on the Property?. . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (16) intermittent or weather springs that affect the Property? . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (17) any material defect in any irrigation system, fences, or signs on the Property?. . . . . [ ] | | [ ✓ ] |
| (18) conditions on or affecting the Property that materially affect the health or safety of an ordinary individual?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (19) any of the following rights vested in others: | | |
| (a) outstanding mineral rights? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (b) timber rights? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (c) water rights? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |
| (d) other rights?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] | | [ ✓ ] |

If you are aware of any of the conditions listed above, explain. *(Attach additional information if needed.)*

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Property Condition Statement concerning 18403 RIM DRIVE, SAN ANTONIO, TX 78257

## PART 2 - Complete only if Property is Improved

A. Are you (Seller or Landlord) aware of any material defects in any of the following on the Property?

| | Aware | Not Aware | Not Appl. |
|---|---|---|---|
| (1) Structural Items: | | | |
| (a) foundation systems (slabs, columns, trusses, bracing, crawl spaces, piers, beams, footings, retaining walls, basement, grading)? | [ ] | [ ✓ ] | [ ] |
| (b) exterior walls? | [ ] | [ ✓ ] | [ ] |
| (c) fireplaces and chimneys? | [ ] | [ ✓ ] | [ ] |
| (d) roof, roof structure, or attic (covering, flashing, skylights, insulation, roof penetrations, ventilation, gutters and downspouts, decking)? | [ ] | [ ✓ ] | [ ] |
| (e) windows, doors, plate glass, or canopies | [ ] | [ ✓ ] | [ ] |
| (2) Plumbing Systems: | | | |
| (a) water heaters or water softeners? | [ ] | [ ✓ ] | [ ] |
| (b) supply or drain lines? | [ ] | [ ✓ ] | [ ] |
| (c) faucets, fixtures, or commodes? | [ ] | [ ✓ ] | [ ] |
| (d) private sewage systems? | [ ] | [ ] | [ ✓ ] |
| (e) pools or spas and equipments? | [ ] | [ ] | [ ✓ ] |
| (f) sprinkler systems? | [ ] | [ ✓ ] | [ ] |
| (g) water coolers? | [ ] | [ ] | [ ✓ ] |
| (h) private water wells? | [ ] | [ ] | [ ✓ ] |
| (i) pumps or sump pumps? | [ ] | [ ✓ ] | [ ] |
| (3) HVAC Systems: any cooling, heating, or ventilation systems? | [ ] | [ ✓ ] | [ ] |
| (4) Electrical Systems: service drops, wiring, connections, conductors, plugs, grounds, power, polarity, switches, light fixtures, or junction boxes? | [ ] | [ ✓ ] | [ ] |
| (5) Other Systems or Items: | | | |
| (a) security or fire detection systems? | [ ] | [ ✓ ] | [ ] |
| (b) porches or decks? | [ ] | [ ✓ ] | [ ] |
| (c) gas lines? | [ ] | [ ✓ ] | [ ] |
| (d) garage doors and door operators? | [ ] | [ ✓ ] | [ ] |
| (e) loading doors or docks? | [ ] | [ ] | [ ✓ ] |
| (f) rails or overhead cranes? | [ ] | [ ] | [ ✓ ] |
| (g) elevators or escalators? | [ ] | [ ] | [ ✓ ] |
| (h) parking areas, drives, steps, walkways? | [ ] | [ ✓ ] | [ ] |
| (i) appliances or built-in kitchen equipment? | [ ] | [ ✓ ] | [ ] |

If you are aware of material defects in any of the items listed under Paragraph A, explain. *(Attach additional information if needed.)*

(TAR-1408) 4-1-14    Initialed by Seller or Landlord: _____    and Buyer or Tenant ⎡DS⎤ KMc    Page 3 of 4

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Diamond Brite

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

DocuSign Envelope ID: DBBF978E-B6CC-461A-A816-154F88C792A5

Commercial Property Condition Statement concerning **18403 RIM DRIVE, SAN ANTONIO, TX 78257**

B. Are you (Seller or Landlord) aware of:        <u>Aware</u>    **Not** <u>Aware</u>

(1) any of the following water or drainage conditions materially and adversely affecting the Property:

     (a) ground water? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

     (b) water penetration?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

     (c) previous flooding or water drainage?. . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

     (d) soil erosion or water ponding?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

(2) previous structural repair to the foundation systems on the Property?. . . . . . . . . . . . [   ]    [ ✓ ]

(3) settling or soil movement materially and adversely affecting the Property?. . . . . . . . [   ]    [ ✓ ]

(4) pest infestation from rodents, insects, or other organisms on the Property? . . . . . . . . [   ]    [ ✓ ]

(5) termite or wood rot damage on the Property needing repair? . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

(6) mold to the extent that it materially and adversely affects the Property? . . . . . . . . . . . [   ]    [ ✓ ]

(7) mold remediation certificate issued for the Property in the previous 5 years? . . . . . . . [   ]    [ ✓ ]
*if yes, attach a copy of the mold remediation certificate.*

(8) previous termite treatment on the Property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

(9) previous fires that materially affected the Property? . . . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

(10) modifications made to the Property without necessary permits or not in compliance with building codes in effect at the time? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [   ]    [ ✓ ]

(11) any part, system, or component in or on the Property not in compliance with the Americans with Disabilities Act or the Texas Architectural Barrier Statute? . . . . . [   ]    [ ✓ ]

If you are aware of any conditions described under Paragraph B, explain. *(Attach additional information, if needed.)*

**The undersigned acknowledges receipt of the foregoing statement.**

**Seller or Landlord:**   Diamond Brite Enterprises LLC.     **Buyer or Tenant:**     Racer Wash Management, LLC.

By: _____       By: _____
    By (signature):   *Andrew L. Foster*       By (signature):   *Keith McNeese*
    Printed Name:                               Printed Name:
    Title:   *President, manager*                 Title:  Partner

By: _____       By: _____
    By (signature):                                 By (signature):
    Printed Name:                               Printed Name:
    Title:                                     Title:

**NOTICE TO BUYER OR TENANT: The broker representing Seller or Landlord, and the broker representing you advise you that this statement was completed by Seller or Landlord, as of the date signed. The brokers have relied on this statement as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.**

(TAR-1408) 4-1-14                                                            Page 4 of 4

DocuSign Envelope ID: 80277AE7-4441-4674-BF36-C484A3252547

Silverstone Real Estate

# NORTH TEXAS COMMERCIAL ASSOCIATION OF REALTORS®
## ADDENDUM E TO COMMERCIAL CONTRACT OF SALE
## ADDITIONAL PROVISIONS

Property address or description:  18403 Rim Dr, San Antonio, TX  78257-4501

Add to Continuation page to Commercial Contract Special provisions Addendum Concerning the property at 18403 Rim Drive, San Antonio, Texas 78257

8) This contract is subject to the approval of the United States Bankruptcy Court

9. Change #4 of the special provisions as follows: For consulting fees for a period of one year after the closing and in partial consideration for the covenant not to compete, Seller agrees to pay Andy Foster the sum of $200,000. This amount is part of the $3,075,000 purchase price.

10. 15c2- Default- Please strike out "enforce specific performance, or seek such other relief as may be provided by law, or both

©Copyright 2015 NTCAR -Form No. 1 (11/2015)

ADDENDUM E

Silverstone Real Estate, 5910 Courtyard Dr Ste 300 Austin, TX 78731                                   Phone: 512.416.1008          Fax: .              Diamond Brite CW
Elliot Silverstone                      Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Label Matrix for local noticing
0542-5
Case 17-51391-cag
Western District of Texas
San Antonio
Wed Aug  9 11:19:50 CDT 2017

Diamond Brite Enterprises, LLC
18403 Rim Drive
San Antonio, TX 78257-4501

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

AT&T Corp
% AT&T Services, Inc.
Karen Cavagnaro, Esq.
One AT&T Way, Room 3A104
Bedminster, NJ 07921-2693

Andy Foster
160 Sara Lane
Lumberton, TX 77657-7516

Attorney General of the U.S.
10th & Const. Ave. N.W.#5111
Washington, D.C 20530-0001

Bexar County
c/o Don Stecker
711 Navarro, Suite 300
San Antonio, TX 78205-1749

Bexar County Tax Assessor
PO Box 2903
San Antonio, TX 78299-2903

(p)COMMUNITYBANK OF TEXAS N A
PO BOX 26017
BEAUMONT TX 77720-6017

Hines Global
17703 La Cantera Parkway
San Antonio, Texas 78257-8231

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

James Montgomery
2702 Treble Creek
San Antonio, TX 78258-4496

Luis M. Godines
11314 Oro Canyon
San Antonio, TX 78254-2825

Ruth C. McLane
McLane Law Firm
9901 IH 10 West, #695
San Antonio, TX 78230-2256

SETEDF
2210 Eastex Freeway
Beaumont, TX 77703-4929

Total Merchant Services
255 Old New Brunswick #S-340
Piscataway, NJ 08854-3784

U. S. Attorney/IRS
601 N. W. Loop 410, Suite 600
San Antonio, Texas 78216-5512

U. S. Trustee
615 E. Houston St. Room 533
San Antonio, Texas 78205-2055

United States Small Business Administration
4300 Amon Carter Blvd., Suite 114
Fort Worth, Texas 76155-2652

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539

Dean William Greer
2929 Mossrock, Suite 117
San Antonio, TX 78230-5141


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Community Bank of Texas
5999 Delaware Street
Beaumont, TX 77706

IRS
PO Box 145595 MC 8420G
Cincinnati OH 45250-5595

(d)Internal Revenue Service
P. O. Box 21126
Philadelphia, PA 19114



```
End of Label Matrix
Mailable recipients     21
Bypassed recipients      0
Total                   21
```